Scott E. Davis
State Bar No. 016160
SCOTT E. DAVIS, P.C.
20827 N. Cave Creek Road, Suite 101
Phoenix, AZ  85024

Telephone:  (602) 482-4300
Facsimile:    (602) 569-9720
email: davis@scottdavispc.com

*Attorney for Plaintiff J. Brian Smith*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| J. Brian Smith, | Case No. |
| Plaintiff, | **COMPLAINT** |
| v. | |
| Medtronic, Inc. Long Term Disability Plan, Medtronic, Inc. | |
| Defendants. | |

Now comes the Plaintiff, Brian Smith (hereinafter referred to as "Plaintiff"), by and through his attorney, Scott E. Davis, and complaining against the Defendants, he states:

*Jurisdiction*

1. Jurisdiction of the court is based upon the Employee Retirement Income Security Act of 1974 (ERISA); and in particular, 29 U.S.C. §§1132(e)(1) and 1132(f). Those provisions give the district courts jurisdiction to hear civil actions brought to recover employee benefits.  In addition, this action may be brought before this Court pursuant to 28

U.S.C. §1331, which gives the Court jurisdiction over actions that arise under the laws of the United States.

*Parties*

2. Plaintiff is a resident of Maricopa County, Arizona.

3. Upon information and belief, Defendant Medtronic, Inc. (hereinafter referred to as the "Company") sponsored, subscribed to and administered a self insured group disability insurance plan. The name of the Plan is the Medtronic, Inc. Long Term Disability Plan (hereinafter referred to as the "Plan"). The Company's purpose in creating the Plan was to provide disability insurance for its employees and to provide its employees with welfare benefits. At all times relevant hereto, the Plan constituted an "employee welfare benefit plan" as defined by 29 U.S.C. §1002(1).

4. Upon information and belief, several companies known as CDMI Disability Solutions (hereinafter "CDMI") and Hartford Life and Accidental Insurance Company hereinafter "Hartford") may have functioned at separate times as claims administrators of the Plan; however, pursuant to the relevant ERISA regulation, the Company or Plan may not have made a proper delegation or properly vested fiduciary authority or power in either of the aforementioned companies.

5. Upon information and belief, Plaintiff believes the Plan and Company operated under a structural conflict of interest in his claim due to the fact they operated in dual roles as the decision maker with regard to whether Plaintiff was disabled as well as the payor of benefits; *to wit,* their conflict existed in that if Plaintiff was disabled those entities were also liable for payment of benefits.

6. The Company and Plan conduct business within Maricopa County and all events giving rise to this Complaint occurred within Maricopa County.

*Venue*

7. Venue is proper in this district pursuant to 29 U.S.C. §1132(e)(2) and 28 U.S.C. §1391.

*Nature of the Complaint*

8. Incident to his employment, Plaintiff was a covered employee pursuant to the Plan and a "participant" as defined by 29 U.S.C. §1002(7). Plaintiff seeks disability income benefits from the Plan and the Company pursuant to §502(a)(1)(B) of ERISA, 29 U.S.C. §1132(a)(1)(B) as well as any other employee benefits he may be entitled to from the Company as a result of being found disabled.

9. After working for the Company as a loyal employee, Plaintiff became disabled due to serious medical conditions and was unable to work in his designated occupation as a Sales Representative for the Company on or about June 7, 2005. Plaintiff has remained disabled as that term is defined in the Plan continuously since that date and has not been able to return to any occupation due to the combination of his serious medical conditions.

10. Upon information and belief, the Plan provides the following definition of a covered disability which applies to Plaintiff's claim after the receipt of benefits for one (1) year:

> To be considered Totally Disabled after this period of time, the illness or accidental injury must prevent you from working at any occupation for which are, or reasonably could become, qualified by education, training or experience, and you are not working at all.

11. Plaintiff applied for long term disability benefits through the Plan and these were approved as of December 3, 2005.

12. The Plan required Plaintiff to file a claim for Social Security (SSA) disability benefits due to the Plan's other income offset provision which allows the Plan to reduce its liability to Plaintiff by any benefits he or his family may receive from other entities because he is disabled, such as SSA.

13. In a letter dated December 4, 2006, the Plan's claim administrator, CDMI, also required Plaintiff to file a claim for SSA benefits which he did thereafter. On November 27, 2007, SSA notified Plaintiff his claim for disability benefits was approved as it found he was unable to work in any occupation on June 5, 2007. SSA's definition of disability is substantially similar, if not identical, to the Plan's definition of disability; therefore, SSA's independent and un-conflicted determination that Plaintiff is currently and has been unable to work in any occupation since June 5, 2007, is relevant evidence for this Court to consider with regard to whether Plaintiff meets the Plan's definition of disability.

14. In a letter dated December 17, 2007, the Plan, through its claim administrator, CDMI, notified Plaintiff that as a result of his SSA claim being approved and because he had received benefits from SSA, his Medtronic, Inc. disability claim had been overpaid in the amount of $44,623 in addition to any amount SSA paid in dependents benefits. Thereafter, as requested, Plaintiff paid all amounts due to the Plan as a result of his receipt of SSA benefits.

15. In a letter dated June 18, 2008, notwithstanding the approval by SSA and Plaintiff's payment of the SSA overpayment, the Plan's claim administrator, CDMI, terminated Plaintiff's benefits effective July 1, 2008, after it found he no longer met the Plan's definition of disability. The decision was based on a self serving, one sided review of the evidence which emphasized the Plan's evidence and de-emphasized Plaintiff's evidence which proved he continued to meet the Plan's definition of disability.

16. In evaluating Plaintiff's claim for long term disability benefits, the Plan relied on an Independent Medical Examination by Brad Sorosky, M.D., a functional capacity evaluation by HealthSouth, a medical records only peer review by Khalafalla Bushara, M.D. and a vocational evaluation by Alan Getreu, MA. These entities and individuals' conflicts of interest are apparent in the reports they authored which reveal they unlawfully and erroneously ignored or de-emphasized the nature of Plaintiff's progressive medical condition and the limitations he had as a result and ignored or failed to properly consider evidence which supported Plaintiff's claim as well as his self-reported complaints and the combined impact [1] Plaintiff's medical conditions and/or the side effects the prescribed medications may have had on his ability to work in any occupation. Plaintiff believes this evidence was critical because the aforementioned limitations precluded any gainful employment and were sufficient to meet any definition of disability in the Plan. Plaintiff's aforementioned evidence should have been properly considered by any reasonable un-conflicted fiduciary and the fact it was not precluded a lawful, full and fair review pursuant to ERISA, specifically 29 U.S.C. § 2560.503-1.

17. Upon information and belief, Plaintiff believes these entities and individuals' conflicts of interest are apparent in that they may have an incentive to protect their own relationships with the disability insurance industry or with the Plan or other plan administrators by providing medical evidence in the form of examinations or reports which de-emphasizes evidence supporting a disability claim and selectively reviewing or ignoring other evidence, such as occurred in Plaintiff's claim, in order to provide evidence favorable to the Plan which supported the denial of Plaintiff's claim. These entities and individuals

---

[1] *See Peterson v. Fed. Express Corp. Long Term Disability Plan*, 2007 U.S. Dist. LEXIS 41590 (D. Ariz. 2007).

provided an unlawful review for numerous reasons, including but not limited to, none of them considered the fact Plaintiff's claim for SSA disability benefits had been approved or the fact it found he was unable to work in any occupation. In addition, none of these entities or the Plan ever engaged Plaintiff in a dialogue to obtain any of the evidence submitted in support of his SSA claim. Plaintiff believes these entities or individuals' conflicts of interest led to their biased opinions and the Plan's conflict of interest led it to rely on only evidence which supported the denial of Plaintiff's claim.

18. Pursuant to 29 U.S.C. §1133, Plaintiff timely appealed the June 20, 2008 denial of his claim in a letter dated on or about December 16, 2008.

19. In support of his appeal, on July 20, 2009 Plaintiff submitted significant medical and vocational evidence to the Plan which proved he was unable to work in any occupation and proved he met the definition of disability in the Plan. The evidence included medical records and opinions from two (2) treating physicians, a functional capacity evaluation, a vocational evaluation from a vocational expert all of whom essentially disagreed with the evidence relied on by CDMI and the Plan when they denied Plaintiff's claim. Plaintiff asked the Plan to commence a review of his claim on that date.

20. In evaluating Plaintiff's claim on appeal, the Plan had an obligation pursuant to ERISA to administer his claim "solely in his best interests and other participants" which it failed to do. [2]  On February 12, 2010, after being in possession of Plaintiff's evidence for

---

[2] "It sets forth a special standard of care upon a plan administrator, namely, that the administrator "discharge [its] duties" in respect to discretionary claims processing "solely in the interests of the participants and beneficiaries" of the plan, § 1104(a)(1); it simultaneously underscores the particular importance of accurate claims processing by insisting that administrators "provide a 'full and fair review' of claim denials," Firestone, 489 U.S., at 113, 109 S. Ct. 948, 103 L. Ed. 2d 80 (quoting § 1133(2)); and it supplements marketplace and regulatory controls with judicial review of individual claim

*207 days* on appeal and exceeding any timeframe for review, including extensions permitted by ERISA, the Plan still had not made a decision in his claim.

21. On February 12, 2010, Plaintiff notified the Plan in writing, through its claim administrator, Hartford, that he deemed his claim to be denied because the Plan failed to make a timely decision as required by ERISA, specifically 29 C.F.R. § 2560.503-1(i)(1)(i); (3)(i), which states:

> "within a reasonable period of time, *but not later than* 45 days after receipt of the claimant's request for review by the plan . . . ." (emphasis added). If "special circumstances" exist, then the plan administrator can notify the claimant in writing that it requires a 45-day extension to render its decision, but "[i]n *no event* shall such extension exceed a period of 45 days from the end of such initial period." *Id*. (emphasis added).

22. In the aforementioned February 12, 2010 letter, Plaintiff deemed his claim denied pursuant to ERISA, specifically 29 C.F.R. § 2560.503-1(l).

23. Plaintiff believes the reason the Plan provided an unlawful review which was neither full or fair and that violated ERISA, specifically, 29 U.S.C. § 2560.503-1, and also violated 29 C.F.R. § 2560.503-1(i)(1)(i); (3)(i), because it never made a decision on his claim is due to the aforementioned dual roles it undertook as decision maker and payor of benefits which created an inherent conflict of interest and this conflict may also be a reason the Plan retained CDMI or Hartford to administer his disability claim.

24. Plaintiff is entitled to discovery regarding the aforementioned conflicts of interest of the Plan or any entity or individual involved in the administration and review of his claim and the Court may properly weigh and consider evidence regarding the nature,

---

denials, see § 1132(a)(1)(B). *Metro. Life Ins. Co. v. Glenn*, 128 S. Ct. 2343, 2350 (U.S. 2008).

extent and effect of *any* conflict of interest which may have impacted or influenced the Plan's administration and previous denial of his claim.

25. With regard to whether Plaintiff meets the definition of disability set forth in the Plan, the Court should review the evidence *de novo,* because even if the Court concludes the Plan confers discretion, the unlawful violations of ERISA committed by the Plan and its administrators as referenced herein are so flagrant they justify *de novo* review. In addition, the Plan may not have properly designated either CDMI and/or Hartford to act as an ERISA fiduciary and may not have made a proper delegation of fiduciary authority or power to these entities.

26. As a direct result of the Plan's decision to deny Plaintiff's disability claim and its failure to make any decision on appeal, he has been injured and suffered damages in the form of lost disability benefits in addition to other potential employee benefits he may have been entitled to receive through or from the Plan and/or Company as a result of being found disabled.

27. Pursuant to 29 U.S.C. §1132, Plaintiff is entitled to recover unpaid benefits, prejudgment interest, reasonable attorney's fees and costs from Defendants.

28. Plaintiff is entitled to prejudgment interest at the rate of 10% per annum pursuant to A.R.S. §20-462, or at such other rate as is appropriate to compensate him for losses he incurred as a result of Defendants' nonpayment of benefits.

WHEREFORE, Plaintiff prays for judgment as follows:

A. For and Order requiring Defendants to pay Plaintiff disability benefits and any other employee benefits he may be entitled to as a result of being found disabled pursuant to the Plan from the date he was first denied these benefits through the date of

1  judgment and prejudgment interest thereon as well as any other employee benefits he
2  may be entitled to from the Plan and/or Company as a result of being found disabled;
3       B.    For an order directing Defendants to continue paying Plaintiff the
4  aforementioned benefits until such time he meets the conditions for termination of benefits;
5       C.    For attorney's fees and costs incurred as a result of prosecuting this suit
6  pursuant to 29 U.S.C. §1132(g); and
7       D.    For such other and further relief as the Court deems just and proper.

DATED this 15th of February, 2010.
SCOTT E. DAVIS. P.C.

By:   */s/ Scott E. Davis*
      Scott E. Davis
      Attorney for Plaintiff